S. M. CARR et al. v. J. E. ALEXANDER et al.

*Action to Recover Land—Parties—Nonsuit of Unnecessary Party—Rents and Profits—Damages.*

1. During the pendency of an action relating to land between P. and C., in which there was subsequently a decree directing P. to convey the land to C. upon the payment by the latter of the balance of the purchase-money, P. conveyed to other parties; thereafter C. brought suit for the land against P. and his grantees, who were in possession: *Held,* that P. was not a necessary party, and it was not error to allow plaintiff to enter a nonsuit as to P., the grantor of the other defendants.

2. Where exceptions are not taken to a refusal to submit issues tendered or to those submitted, until after verdict on a motion for new trial, such exceptions are too late to be considered on appeal.

3. Where, in an action to recover land, the defendants sought to introduce in evidence a record of a suit then pending between the plaintiff and another for the purpose of showing that that case was between the same parties and for the same cause of action, and it appeared that none of the present defendants was a party to such suit: *Held,* that the record was properly excluded.

4. Where P., as executor holding a debt against C., and also holding the legal title to land in trust to convey it to C. upon the payment of the debt, conveyed the land to others, P. and his grantees having been in possession and receiving the rents and profits of the land, it was proper, in a suit by C. to recover the land and rents, profits and damages, to adjudge, upon proper findings by the jury, that such rents, profits and damages were chargable against P. to the extent of extinguishing the debt held by him as executor against C.

CIVIL ACTION, tried before *Hoke, J.*, and a jury, at March Term, 1892, of BUNCOMBE Superior Court.

The complaint alleged that in 1871 one N. W. Woodfin contracted to convey a certain tract of land near Asheville to the plaintiff for the sum of eight hundred dollars, which contract was duly registered; that at the time of such contract there was a mortgage on said land due by Woodfin to R. M. Pearson, which was foreclosed in 1872 and conveyed by the commissioner to R. M. Pearson, who subsequently died, leaving a last will and testament, appointing Richmond Pearson executor; that thereafter, in a suit pending in Buncombe Superior Court, originally brought by R. M. Pearson, and to which, after his death, his executors and heirs at law became parties, against the plaintiff, a decree was rendered directing the plaintiffs therein to make a deed for the land to this plaintiff, Carr, upon the payment of the balance due on the purchase-money; that during the pendency of the last mentioned action the executors and heirs at law of R. M. Pearson contracted to convey, and did afterwards convey, the said lands to the defendants, who are in possession of the lands and have received the rents and profits of and endamaged the lands by reason of their occupation, etc. The plaintiff Carr, in 1886, conveyed a four-tenths interest in the land to C. A. Moore, and in 1889 conveyed the balance to J. S. Adams. Wherefore the plaintiffs pray for possession of the land, the execution of necessary conveyances, and for an account of the rents and profits and an application of the same to the judgment against Carr.

The defendants (other than Pearson, executor) in their answer formally admitted or denied the allegations of the complaint, among those denied being the allegation that a decree had been rendered in 1884 in the suit by Pearson, executor, against Carr, directing a conveyance of the land

to Carr upon the payment by the latter of the balance of
the purchase-money contracted to be paid to Woodfin.
They also averred that whatever contracts or conveyances
the plaintiffs Moore and Adams had with or from the plain-
tiff Carr they were made with a full knowledge of the legal
and equitable rights of defendants.

For a further defence they averred that they had in good
faith and without any knowledge of plaintiffs' alleged
equities, bought the land from Richmond Pearson (who
had acquired the rights of the other heirs at law of R. M.
Pearson), entered into possession, which they have main-
tained openly and continuously for more than seven years
under their deeds as color of title prior to the commence-
ment of this suit; that they have greatly improved the
land, which has by such improvement and otherwise greatly
enhanced in value; that the plaintiff Carr, if he ever had
any equity by reason of his contract with Woodfin, had
abandoned the same, etc.

The defendant Richmond Pearson also filed an answer.

When the case was called, and before the jury was im-
paneled or the pleadings were read, the plaintiffs took a
nonsuit as to the defendant Richmond Pearson, executor,
to which defendants excepted.

The plaintiffs and defendants tendered certain issues, and
it was agreed that the Judge should determine the proper
issues during the trial, but such agreement was not to be
taken as a waiver of defendants' right to insist on the
issues tendered nor to object to such as might be submitted.

Plaintiffs introduced the various deeds and contracts
and decrees referred to in their complaint. They also
introduced the record of a case entitled "Richmond Pear-
son, executor of R. M. Pearson, *et al.*, heirs at law of R. M.
Pearson, deceased, against S. M. Carr," pending in the
Superior Court of Buncombe County since its commencement

by R. M. Pearson, as plaintiff, prior to Spring Term, 1874. It was admitted by both parties that Carr had made no tender of the money for which Richmond Pearson, executor, recovered judgment in this action; that no sale by the Clerk, acting as commissioner, had been made, and that the plaintiffs in said cause had made no deposit of title deed to S. M. Carr with the Clerk of the Superior Court as required by the decree. This action was begun by R. M. Pearson against S. M. Carr in 1874.

There was evidence tending to show that the land in question was covered by all of the foregoing contracts, deeds and wills, and the same described in the pleadings in said suits, which land was in controversy in said suits.

The evidence showed that William Smith, J. E. Alexander and J. M. Wright went into the possession of the land pending the suit between R. M. Pearson and his representatives, after his death, against S. M. Carr, in which said land was in controversy, immediately after the same was conveyed to them, and had remained in possession ever since, receiving the rents and profits therefrom.

There was also evidence offered by the plaintiffs tending to show the rental value of the land since July, 1883, to which time the referee, Johnstone Jones, Esquire, ascertained the rents and damages, as appears by his report in the said case of R. M. Pearson against S. M. Carr, duly filed therein, modified by the Court, and damage done thereto every year since in removing wood, timber and fencing therefrom.

There was also evidence introduced tending to show the yearly value of the said lands since July 1st, 1883, but there was no evidence to show that the land had been improved since that time. There was also evidence tending to show that the land had not been damaged by defendants.

The defendants sought to introduce in evidence a record in the case of S. M. Carr against Richmond Pearson, executor, for the purpose of showing that that case, then pending in the Superior Court of Buncombe County, was between the same parties as to this case, and for the same cause of action. The Court, upon inspection of the record, excluded it, upon objection of the plaintiffs, and defendants excepted.

There were no special instructions prayed for by either side and no exception to any part of his Honor's charge to the jury taken at the trial.

The following are the issues (with the responses) submitted to the jury, and were not objected to until after verdict and on the motion for a new trial:

1. What amount is still due as shown by the judgments and decree of 1884 in *Pearson* v. *Carr?* Answer. $330, with interest from July, 1883.

2. What is the annual value of the land from July, 1883? A. $51.50.

3. What damage and waste has been done to land from July, 1883, and in what years was damage done, if it was done? A. Waste, $50; damage, $100—$150; waste accrued between the years 1883 and 1889.

4. Have defendants, or those under whom they claim title believed by them to be good and without knowledge or actual notice of plaintiffs' claim, made permanent valuable improvements on said property? A. No.

5. How much is value of land enhanced by such improvements? A. None.

6. At the time this action was commenced was there another action pending between the parties for same claim and demand? A. No.

7. Has plaintiff Carr abandoned his claim to property? A. No.

8. Are plaintiffs owners of land sued for?　A.　Yes.

9. Are they entitled to the possession of the same?　A.
Yes.

Defendants moved for a new trial for errors in Court:
(1) in permitting *nol. pros.* as to Richmond Pearson, execu-
tor; (2) in holding the record offered by defendants incom-
petent and insufficient to show pendency of another action
for same cause between same parties or privies; (3) for
not submitting issues offered by defendants; (4) that the
Court submitted the issues that it did; (5) the Court erred
in holding Pearson responsible for any rents and profits
from the land since July, 1883. (This was only done as
against Pearson to an amount sufficient to satisfy the judg-
ment).

The Court overruled the motion, and the defendants
excepted.

There was judgment for the plaintiffs that they were the
owners and entitled to the possession of the land and that
they recover from defendants the sum of $122.50, being the
difference between the total rents and profits and damages
and the amount due by Carr on the purchase-money of the
land and interest. The judgment also declared that the
purchase-money due by Carr had been paid in full and that
satisfaction of the judgment in favor of Pearson, executor,
against Carr, rendered in 1884, should be entered. From
the judgment the defendant appealed.

*Messrs. Charles A. Moore* and *Cobb & Merrimon*, for plaintiff.
*Mr. F. A. Sondley*, for defendants (appellants).

BURWELL, J.: The plaintiff, when the case was called for
trial, could enter a nonsuit as to the defendant executor,
and no one had a right to object to this except that par-
ticular defendant, and he only in the event that in his

answer he had demanded affirmative relief against the plaintiffs or some of them, which he had not done. If, when the executor had been thus discharged by the plaintiff, the other defendants had so demanded, the Court might have adjudged him to be a necessary party, and might have directed him to be made a party again at their instance. No such motion was made, nor did his Honor, of his own motion, cause him to be brought in (*The Code*, §189), concluding correctly, as we think, that his presence was not necessary to a complete determination of the controversy.

It appears that the defendants tendered certain issues, but they made no exception to the refusal to submit those they tendered nor any exception to those submitted by his Honor till they asked for a new trial. These exceptions came too late to be considered. However, we do not think they would have availed the defendant if they had been taken in apt time, because the issues settled by his Honor, and submitted to the jury, were sufficient and proper. *Emery* v. *Railroad*, 102 N. C., 209; *Leach* v. *Linde*, 108 N. C., 547.

The record of the suit of S. M. Carr against Richmond Pearson, executor, was properly excluded. It did not show the pendency in the Superior Court of Buncombe County of another action between the same parties and for the same cause of action. Not one of the defendants here was a party to that suit.

When, in 1879, Richmond Pearson, executor, under power given him in the will of his testator, contracted to sell the land in controversy to J. E. Alexander, W. M. Smith and James M. Wright, the legal title thereto was in the heirs of R. M. Pearson in trust to convey it to S. M. Carr in fee whenever the balance of the purchase-money due from him to the estate of R. M. Pearson was paid. In

1884 it was judicially determined that the balance of the said purchase-money was three hundred and forty dollars, which was adjudged to bear interest from July 25 of that year. It is admitted that all the other heirs of R. M. Pearson conveyed their estate in said land to Richmond Pearson, and the latter has conveyed the same to Alexander, Smith and Wright, who, having gone into possession under the executor, to whom the balance of the purchase-money was due, and also holding under a deed from him who was invested with the legal title as trustee for Carr, the vendee, stand in the place of both the executor and heir of R. M. Pearson so far as Carr and his assignee are concerned, and whatever rents and profits would have been credited on the purchase-money, if the land had remained in the hands of the executor, are properly to be credited on that debt, though the land has been held and used, not by the executor, but by his vendees and tenants. *White* v. *Jones*, 88 N. C., 166. It so happened that the trustee held the legal title and the possession and was himself, as executor, the *cestui que trust*. It was his duty to apply the rents and profits of the land to the extinguishment of the debt, until said debt was thereby fully paid, if he chose, as it seems he did, not to have the commissioner to sell the land. And, since he saw fit to hold possession by his assignees, who had notice of Carr's equities, he and they are liable to the plaintiff for such waste and damage to the land as has been committed or done while it was so held. The plaintiffs, the debt due for the purchase of the land being extinguished, are entitled to the possession of it, and to such balance of rents and damages as remain after appropriating as much thereof as may be necessary to the satisfying of that claim.

And the executor's presence in Court as a party to this action was not at all necessary in order that there might be made a settlement that will effectually bar, as it seems, any

lien he may assert on the land for the balance found due him by the decree of 1884. By force of the judgment in this cause the legal title to the land is vested in the plaintiffs, and they hold that title free from any trust in favor of the executor, if in fact he sold the land to the defendants, for the sale of the land by him was a transfer of his debt or claim thereon, and that has been adjudged to have been satisfied by a judgment binding on his assignee.

As the executor was not a party when the decree was rendered it was not strictly proper that it should declare that a judgment standing in his favor should be canceled. If, in truth, he sold the land to the defendants that legal effect will follow. If he had not done so the decree will be harmless as to him, as it has no binding force on the executor except through his assignee. So in neither case can it work harm to him.

No Error. Affirmed.